# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
June 8, 2012

No. 11-10142

Lyle W. Cayce
Clerk

MID-CONTINENT CASUALTY CO.,

Plaintiff-Appellant

v.

ROGER DAVIS d/b/a DAVIS CONSTRUCTION,

Defendant-Appellee

GLORIA SERRATO, Individually and as personal representative of the
Estate of Jorge Serrato; ET AL.,

Intervenors-Defendants-Appellees

Appeal from the United States District Court
for the Northern District of Texas

Before GARZA, DENNIS, and HIGGINSON, Circuit Judges.

HIGGINSON, Circuit Judge:

Appellant Mid-Continent Casualty Company ("Mid-Continent") appeals the district court's final judgment that Mid-Continent has a duty to indemnify Davis Construction in the underlying wrongful death action brought by the family of decedent Jorge Serrato ("Serrato"). We AFFIRM the district court's ruling, finding that the district court did not abuse its discretion in determining that Serrato was an independent contractor and not an employee of Davis Construction.

No. 11-10142

## FACTS AND PROCEEDINGS

In June 2007, decedent Serrato fell through a hole on the second floor of a construction site where he was working as part of a framing crew for Davis Construction and eventually died from the fall. Davis Construction, owned by Roger Davis, was in the business of framing buildings (typically residential) and obtained jobs by bidding on projects with general contractors. Roger Davis or Bill Ritchie would hire crew members for projects Davis Construction was awarded. Davis Construction worked on one job at a time and, therefore, only used one crew. Typically, Davis Construction's crew consisted of four people in addition to Ritchie, who served as a supervisor, and the four workers on the crew often remained the same for years. During the month of Serrato's accident, the four workers on the Davis Construction crew were Vidal Negrete, Eduardo Negrete, Hector Sanchez, and Jorge Serrato.

Following the accident, the Serratos[1] filed a wrongful death, survival, and personal injury action (the "Underlying Lawsuit") against Davis Construction and Tommy Richie Construction, LLC. Mid-Continent Casualty Company ("Mid-Continent") sued Roger Davis d/b/a Davis Construction, seeking a declaratory judgment that Mid-Continent had no duty to indemnify Davis Construction in the Underlying Lawsuit because Serrato was an employee of Davis Construction. The Serratos filed a motion to intervene in the Mid-Continent action, and the district court granted that motion.

---

[1] Intervenors Gloria Serrato, Cornejo Lopez de Serrato, and Jose Benjamin de Serrato seek at least $5 million in damages for Serrato's wrongful death, at least $5 million for Serrato's survival damages, and at least $5 million in exemplary damages in this underlying lawsuit.

No. 11-10142

At the time of Serrato's accident, Davis Construction had a Commercial Lines Policy, issued by Mid-Continent under policy number 04-GL000660872 with an effective policy period from January 24, 2007 to January 24, 2008 (the "Policy"). The Policy contained two relevant coverage exclusions to which the Policy does not apply:

> d. Workers' Compensation and Similar Laws
> Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

> e. Employer's Liability
> "Bodily injury" to:
> (1) An "employee" of the insured arising out of and in the course of:
> (a) Employment by the insured; or
> (b) Performing duties related to the conduct of that insured's business . . . .

Mid-Continent claims that because Serrato was an employee of the insured, Davis Construction, exclusions "d" and "e" of the Policy apply to exclude coverage for losses resulting from the Underlying Lawsuit.

The district court conducted a bench trial and issued a nine-page Memorandum Order and Opinion making findings of fact and conclusions of law. The following day, the district court signed its final judgment, declaring that Serrato was an independent contractor—not an employee of Davis Construction—and, therefore, Mid-Continent has a duty to indemnify Davis Construction in the Underlying Lawsuit.

## STANDARD OF REVIEW

In an appeal from a district court's final judgment following a bench trial, we review the district court's findings of fact for clear error and review conclusions of law de novo. *Dickerson v. Lexington Ins. Co.*, 556 F.3d 290, 294

3

## No. 11-10142

(5th Cir. 2009). Under this standard, "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573–74 (1985).

The determination of whether an individual is an employee or an independent contractor is a conclusion of law to be reviewed de novo. *Rodriguez v. Sarabyn*, 129 F.3d 760, 765 (5th Cir. 1997). However, "[f]indings on the *Limestone* factors themselves" are factual determinations and, therefore, are reviewed for clear error. *Amerisure Ins. Co. v. Navigators Ins. Co.*, 445 F. App'x 756, 759 (5th Cir. 2011) (unpublished); *cf. Brock v. Mr. W. Fireworks, Inc.*, 814 F.2d 1042, 1044 (5th Cir. 1987).

### DISCUSSION

The issue before us is whether the district court erred in concluding that Mid-Continent had a duty to indemnify Davis Construction because Serrato was an independent contractor and not an employee of Davis Construction.[2]

When jurisdiction is based on diversity of citizenship, as it is in this case, we apply the substantive law of the forum state "in an attempt to rule as a [forum state's] court would if presented with the same issues." *Musser Davis*

---

[2] Appellees alternatively argue that even if the district court erred in its legal conclusion that Serrato was an independent contractor and not an employee, Mid-Continent is nonetheless estopped from denying that Serrato was an independent contractor based on evidence that Davis Construction detrimentally relied on Mid-Continent's representations with respect to the characterization of Davis Construction's workforce. Appellees cite: (1) the yearly audit summaries Davis Construction received from Mid-Continent for the policy periods between January 24, 2003 and January 24, 2008 which state, "[t]he insured has no employees; contractor labor is utilized for the construction work," and (2) the Policy itself which states, "[t]he insured has no employees; contractor labor is utilized for the construction work." The district court did not address this estoppel argument in its Memorandum and Opinion, and because we affirm the district court's legal conclusion that Serrato was an independent contractor, we need not reach Appellees' estoppel argument.

No. 11-10142

*Land Co. v. Union Pac. Res.*, 201 F.3d 561, 563 (5th Cir. 2000). Therefore, because the forum state here is Texas, we apply the Texas definition of "employee" and "independent contractor" in our analysis.

In Texas, determining whether an individual is acting in the capacity of an "independent contractor" or as an "employee" requires assessment of the amount of control the employer exerts or has the right to exert over the "progress, details, and methods of operations of the work." *Limestone Prod. Distrib. Inc. v. McNamara*, 71 S.W.3d 308, 312 (Tex. 2002). The Texas Supreme Court set forth the following five factors to assess whether a worker is an employee or independent contractor:

> (1) the independent nature of the worker's business; (2) the worker's obligation to furnish necessary tools, supplies, and material to perform the job; (3) the worker's right to control the progress of the work except about final results; (4) the time for which the worker is employed; and (5) the method of payment, whether by unit of time or by the job.

*Id.* at 312. Importantly, "the legal test for determining independent-contractor status in Texas is right to control, not comparison of control." *Id.*

The district court, after conducting a trial on the merits during which testimony was heard from five witnesses about who controlled Serrato's fate, held that Serrato was an independent contractor and not an employee of Davis construction based on an analysis explicitly applying the five factors laid out by the Texas Supreme Court in *Limestone.* We examine the district court's analysis of each of the five *Limestone* factors, reviewing each of these factual determinations for clear error. *Amerisure*, 445 F. App'x at 759.

Considering the first *Limestone* factor, "the independent nature of the worker's business," the district court acknowledged that this factor "does very

5

No. 11-10142

little to shed light on . . . Davis' right to control the crew's work," and Mid-Continent concedes that the district court's analysis of this factor "was inconclusive."[3] *See Limestone*, 71 S.W.3d at 312. On the one hand, the district court found that Davis "does not have control over whether the crew members work for other framing crews or even run their own framing business."[4] On the other hand, the district court also found that, "Jorge Serrato and the other crew member's business does not appear to be independent in nature." Because the district court's findings are mixed, we consider the first *Limestone* factor to be neutral, supporting neither a finding that Serrato was an employee nor a finding that Serrato was an independent contractor.[5]

---

[3] We find unpersuasive Mid-Continent's argument that the district court's finding, based on the testimony of Davis, Ritchie, and Mid-Continent auditor Lyle Whitsett, that the industry standard treats members of a framing crew as independent contractors "is influenced by an erroneous view of the law and is, therefore, entitled to no deference." Appellants cite an unpublished district court case, *Caballero v. Archer*, No. SA-04-CA-561-OG, 2007 WL 628755, at *4 (W.D. Tex. Feb. 1, 2007), as support for their argument that an industry standard should not be considered. The district court in *Caballero*, however, gave no weight to the testimony of a retained expert whose opinions were "based on his own interpretation of industry standards or trucking practices . . . ." *Caballero*, 2007 WL 628755, at *4. Here, by contrast, the industry standard evidence came from the testimony of Mid-Continent's own auditor, who testified that, in his experience, most home building businesses, such as Davis Construction, use contract labor, not employees. Therefore, the district court's consideration of Mid-Continent's auditors' adverse statements regarding industry standards, which also serve to illuminate the expectations that Mid-Continent had when it agreed to insure Davis Construction, was not an error.

[4] This factual finding is supported by testimony that crew leader Bill Ritchie had a side business framing and building homes. Also, crew-member Vidal Negrete testified that he worked for "a lot" of other people, including "some of [his] own work," during the ten years he also worked with Davis Construction "because sometimes we work not all of the time [for Davis]."

[5] Mid-Continent contends that the district court's finding, listed under the "Background" section of its Memorandum Opinion and Order, that, "[m]ost of the workers have framing experience when Davis Construction hires them to be on the crew" is clearly erroneous. Because the district court does not discuss this point in its analysis of the first

No. 11-10142

The district court found that, "[t]he second *Limestone* factor, 'the worker's obligation to furnish necessary tools, supplies, and material to perform the job' weighs heavily in favor of finding that Jorge Serrato was an independent contractor." Though framing crew member Vidal Negrete testified that Davis Construction provided some of the tools to the crew members,[6] he also testified, both before and after his single statement that Davis provided some tools, that: (1) the compressors used by the crew in 2007 belonged to either him or Ritchie; (2) that Serrato had his own nail gun, saw, and hand tools; and (3) that Davis did not provide any tools to Serrato. Similarly, Ritchie testified that: (1) he had a compressor that the other crew members would use; (2) "everybody has got a compressor;" and (3) that most workers had their own nail guns, but if they did not, they would "be a cut man instead of a nail man or something of that nature." Crew member Hector Sanchez testified that he and his fellow crew members had their own tools or borrowed them from other crew members.[7] Finally, in his

---

*Limestone* factor, we need not address it here.

[6] While testifying about the work that was being done in 2007, the year of Serrato's accident, Vidal Negrete was asked, "[s]ome of the tools that were being used were furnished by the company?" Vidal Negrete responded, "[t]hat is right." We have not found and Mid-Continent does not point to any other evidence in the record that shows Davis provided tools to crew members.

[7]    Q: Mr. Sanchez, did Vidal have tools in his truck for the workers
            to use who didn't have their own tools?
         A: You see, normally it is our tools. We put it in the truck just so
            that we don't have to carry it around ourselves.
         Q: Did everyone have their own compressor?
         A: Not compressor but, you know, like the gun or the saw, yes.
         Q: Did everyone have their own nail gun?
         A: Yes.

No. 11-10142

deposition, Davis stated, "[t]he guys furnish all their hand tools, that's nail guns, they've got—they carry their own compressors and everything."[8]

At oral argument, Mid-Continent contended that the district court's finding that, "there is no evidence that Davis or Davis Construction *ever* provided *any* of the crew members with tools" (emphasis added) was clearly erroneous.[9] We agree that this particular factual finding is clearly erroneous because, as discussed above, there was a statement by Vidal Negrete that Davis Construction provided some tools to crew members. However, considering the inherent inconsistency of Vidal Negrete's testimony, coupled with the testimony from crew members and Davis himself that shows Davis did not provide tools for the crew, the district court did not clearly err in finding that the evidence overall showed that Davis did not provide tools to the crew members and that Davis Construction crew members either provided their own tools or borrowed tools from other crew members. Moreover, the district court did not err in any of the other factual findings it made in its analysis of the second *Limestone* factor.[10]

---

[8] Davis continued to explain that no other tools were needed: "[t]o build a house, you need a nail gun and a compressor and some nails and that's it." Later, Davis reiterated, "[t]he guys that work out there. Each one has got their own set of tools."

[9] Mid-Continent failed to make this argument in any of its briefing to this court, but we nonetheless address this argument because this factual finding is included in the district court's analysis of the second *Limestone* factor and therefore necessary to a review of the district court's factual finding regarding that factor.

[10] Davis' testimony supports the district court's finding that though crew members were not responsible for providing materials for the jobs, Davis Construction also did not have ultimate responsibility for providing materials. A general contractor would sometimes request that Davis or Ritchie place an order for necessary materials, such as wood, but the general contractor retained ultimate responsibility for provision of and payment for materials. In a factually similar case, *Anchor Cas. Co. v. O.E. Hartsfield*, 390 S.W.2d 469 (Tex. 1965), where the general contractor furnished materials needed for the job, the court did not discuss that fact as weighing in favor of either a finding that Hartsfield was an employee or an independent

No. 11-10142

Therefore, we conclude that the district court did not err in its ultimate factual finding that the second *Limestone* factor weighs in favor of a determination that Serrato was an independent contractor.

The district court held that the third *Limestone* factor, "the worker's right to control the progress of the work except about final results," also supported finding that Serrato was an independent contractor and not employee of Davis Construction. *See Limestone*, 71 S.W.3d at 312. The freedoms that the district court correctly lists to support its third *Limestone* factor analysis—that the crew members were free to choose when to start and stop work each day and decided among themselves which particular task each worker would perform and the ways in which tasks were to be completed—are supported by evidence in the record. *See id.* (finding that a worker's ability to set his own hours supports a finding that the worker was an independent contractor); *Anchor Cas.*, 390 S.W.2d at 471 (same). In his deposition and at trial, Ritchie testified that: (1) the crew members, not Davis, divided up who does what on the job site; (2) that though the crew members generally worked eight-hour days, they set their own hours and "they showed up when they showed up." Similarly, Davis testified at trial that: (1) he did not set work hours for the crew; (2) he did not keep track of the actual hours each crew member worked; (3) he did not assign crew members particular tasks; and (4) he "primarily just want[ed] them to do the job and get it done." Finally, Vidal Negrete testified at trial that: (1) the crew members, not

---

contractor and ultimately held that a worker for the subcontractor was an independent contractor. *Id.* at 470–71 (holding that Hartsfield was an independent contractor of subcontractor Wolff where Hartsfield was an experienced finish carpenter who furnished his own tools, set his own hours, was paid by the job, and was not carried on the social security or income tax withholding rolls of Wolff).

No. 11-10142

Davis, set their work start and stop times and (2) that Davis did not assign tasks to the crew members.

Mid-Continent argues that Davis Construction, not Serrato or the other crew members, controlled the progress of the work because Davis tried to come by the job site once a day to check on the work and supervisor Ritchie reported to Davis daily on the progress being made on the job. However, Davis did not control each step of the progress of the job; instead, he only made sure that the work was being done according to blueprints, identified any problems with the work and asked that they be corrected, and tried to speed up the work if it was progressing too slowly. *See Limestone*, 71 S.W.3d at 313 (holding that where evidence establishes that employer "merely controlled the end sought to be accomplished" and the worker "controlled the means and details of accomplishing the work," the worker was an independent contractor).

The district court found that the fourth *Limestone* factor, "the time that the worker is employed," supported a finding that Serrato was an independent contractor because Serrato was "employed for two week time periods several times over the course of approximately eighteen months." *See id.* at 312. The district court's factual findings that support its analysis of this factor—that crew members were only employed by Davis Construction for the time that it takes to complete one job and that there was no guarantee that Davis would hire a crew member for the next job or that there will even be a next job—are supported by testimony at trial. Davis testified at trial that the crew members only get paid if they are working a job, stating, "[i]f they don't work, no, sir, there is no pay." Moreover, the evidence shows that one crew member, Eduardo Negrete, worked for Davis Construction for three or four years, but not

10

continuously, and "left in 2008 and all when work got slow." Eduardo Negrete later returned to working for Davis.

Mid-Continent argues that the fact that Ritchie had worked continuously for Davis Construction for seventeen years and Vidal Negrete for eight years when Serrato's accident occurred in 2007 supports a finding that Serrato and the other crew members were employees. However, a long-term relationship does not necessarily mean that relationship is employer-employee. *See id.* at 310 (holding that a driver who had worked for the same entity for more than three years was an independent contractor). More importantly, Serrato, the subject of the district court's analysis, had only been working for Davis Construction for approximately eighteen months to two years prior to his June 2007 accident. Therefore, we cannot say that the district court clearly erred when it credited testimony that the fourth *Limestone* factor supported a finding that Serrato was an independent contractor.

Finally, the district court found that the fifth *Limestone* factor, "the method of payment, whether by unit of time or by the job," weighed strongly in favor of finding that Serrato was an independent contractor. *See id.* at 312. The district court found that: (1) the amount of time each crew member was employed and the amount each crew member was paid depended on the job;[11] (2) Davis did not withhold any social security, federal withholding taxes, or Medicare from the payments he made to crew members; (3) Davis did not pay the State of Texas unemployment taxes based on compensation being paid to the crew members; and (4) Davis issued each crew member a 1099 at the end of the

---

[11] As the district court correctly noted from Davis' testimony at trial, Serrato was paid between $300 and $400 per week.

year.[12]    These findings, supported by evidence in the record, support a determination that the fifth *Limestone* factor weighs in favor of finding that Serrato was an independent contractor. *See id.* at 312–13 (holding that the worker was an independent contractor where the worker's income was reported on a 1099 form instead of a W-2 and the worker paid his own social security and federal income taxes); *Anchor Cas.*, 390 S.W.2d at 471 (holding that the fact that the worker was not on the social security and income tax withholding rolls of the subcontractor helped establish the worker was an independent contractor).

Mid-Continent argues that the district court erred in its fifth *Limestone* factor analysis because there is testimony in the record from crew members Vidal Negrete and Hector Sanchez that they were paid at an hourly rate. However, there is also ample conflicting testimony from Davis and Ritchie that crew members were not paid hourly and were, instead, paid a weekly rate, which varied based on the job, and was the same rate regardless of how many hours they actually work each week.[13]    Therefore, because there is conflicting evidence

---

[12] Notably, Davis testified that he was audited by the IRS in 1993 and the IRS did not at that time question his classification of the members of the framing crew as independent contractors.  Davis also testified that his CPA never questioned him about his classification of the framing crew members.

[13] Ritchie testified that: (1) the amount of money he was paid per week "changed per job;" (2) that "[e]very job pays differently.  There is more money is some jobs than there is other jobs, and if a job are [sic] larger, more complex, they pay more, you know;" and (3) that the amount he was paid was the same regardless of the number of days he worked in a particular week.  Davis testified at trial that he calculated the crew members' pay, which was by the week, in the following manner: "It is more or less when I bid a job, as I put in my deposition, that I about know what it takes in labor costs to build that house up to 12 days, and so I break it down that way due to their experience and everything," an explanation he repeated later during his testimony.  When Davis was asked again about the crew members' pay, he stated, "it is based on the bid of the job . . . ."  Davis explained that the crew members "would be compensated by the amount of the money I was able to draw from the builder for the amount of work that was done."  Davis also testified at trial that the weekly rate he paid

in the record, the district court did not err by giving more weight to the testimony of Davis and Ritchie and finding that Davis Construction framing crew members were paid by the job. *See Halliburton v. Texas Indem. Ins. Co.*, 213 S.W.2d 677, 679–81 (Tex. 1948) (holding that workers' calculation of their pay in order to receive a certain hourly rate did not make them employees when the majority of other evidence presented weighed in favor of finding workers were independent contractors).

In sum, the facts of this case may be analogized to the facts of *Limestone*, where the Texas Supreme Court held that summary judgment evidence established that Mathis, a distributer, was, as a matter of law, an independent contractor. 71 S.W.3d at 313. In *Limestone*, Coy Mathis had been an employee of Limestone Products for a long period of time when Limestone Products changed his designation to an independent contractor, including changing his tax documentation from a W-2 to a 1099 form. *Id.* at 310. Mathis had been working for Limestone for more than three years as both an employee and then as an independent contractor when his accident occurred. *Id.* The court found that Mathis was an independent contractor because he provided his own tools (including his truck); paid his own insurance, social security and federal income taxes; no longer received workers' compensation coverage from Limestone; received a 1099; and had considerable discretion regarding the details of his work and how to complete it. *See id.* at 312–13. Similarly, here, Serrato provided his own tools (or borrowed them from other crew members); did not have social security or federal income taxes withheld; was issued a 1099 (not a W-2) from Davis Construction; was not provided workers' compensation coverage

---

crew members did not vary based on the actual number of hours worked per week.

No. 11-10142

from Davis Construction; and had discretion over the details of how his work was to be completed.

The district court did not abuse its discretion because, as discussed above, there is evidence in the record to support the factual findings the district court made that four of the five *Limestone* factors, the remaining factor being inconclusive, weigh in favor of the conclusion that Serrato was an independent contractor and not an employee of Davis Construction.

## CONCLUSION

For the foregoing reasons, we AFFIRM the district court's final judgment that Mid-Continent has a duty to indemnify Davis Construction in the underlying wrongful death action brought by the family of decedent Serrato, based on a conclusion that Serrato was an independent contractor.