AFFIRM; Opinion issued November 9, 2012.



In The

# Court of Appeals
# Fifth District of Texas at Dallas

No. 05-11-00637-CV

## MID-CONTINENT CASUALTY COMPANY, Appellant

## V.

## ANDREGG CONTRACTING, INC. AND BACILO ZAPATA, Appellees

**On Appeal from the 366th District Court**
**Collin County, Texas**
**Trial Court Cause No. 366-02241-2008**

# OPINION

Before Justices Bridges, Richter, and Lang
Opinion By Justice Richter

This case arises out of an injury suffered by Bacilio Zapata while performing tree cutting services for Andregg Contracting, Inc.("Andregg"). The trial court concluded Zapata was an independent contractor, and therefore, under a commercial general liability ("CGL") policy issued to Andregg by Mid-Continent Casualty Company ("MCC"), MCC owed a duty to indemnify Andregg for the injury. In two issues on appeal, MCC contends the trial court erred in its determination because Zapata was not an independent contractor, but rather an employee for whom coverage was excluded under the policy. Concluding appellant's arguments are without merit, we affirm the trial court's judgment.

## BACKGROUND

Andregg is a general contractor that performs primarily excavation and demolition work. For the eighteen years it has been in business, Andregg has used subcontractors for 100% of its work.

Beginning in 2003 and through the relevant time period, Andregg was insured by MCC under a CGL policy. The policy contains two coverage exclusions to which the policy does not apply. The first exclusion applies to a loss that is covered by or should be covered by worker's compensation. The second exclusion applies to bodily injury sustained by an employee while acting in the course and scope of employment.[1] Every year, MCC performed a premium audit of Andregg, and each year the audit report stated that "the insured uses all subs for their work. All subs reviewed with insured."

Andregg hired Zapata to work on two demolition jobs within walking distance of each other. For a three week period, Zapata performed a variety of manual labor tasks. Toward the end of the second project, Zapata was injured while working to take down a tree.

Zapata filed suit against Andregg for personal injuries (the "underlying lawsuit"). The underlying lawsuit was tried to a jury, and the jury found Andregg liable to Zapata for negligence. The final judgment in the underlying lawsuit awarded Zapata $362,987.48.

MCC subsequently filed a declaratory judgment action against Andregg and Zapata seeking a declaration of whether it owed a duty to indemnify Andregg for the final judgment

---

[1] According to MCC, the two exclusions work in tandem. Thus, if the trial court had found Zapata to be an employee, both exclusions would have applied to preclude coverage.

in the underlying lawsuit. The case was tried to the bench, and the trial court found that MCC owed a duty of indemnity to Andregg. The trial court subsequently signed findings of fact and conclusions of law. The court's conclusions — that Zapata was an independent contractor rather than an employee, and as a result, MCC owed Andregg a duty of indemnity under the CGL policy — form the basis of this appeal.

## ANALYSIS

In two issues, MCC asserts the trial court's findings are not supported by the evidence and the trial court failed to properly apply the controlling law. Because the trial court entered findings of fact and conclusions of law following a bench trial, we afford the findings of fact the same force and effect as jury findings. *See Buckeye Ret. Co., LLC, Ltd. v. Bank of Am., N.A.*, 239 S.W.3d 394, 399 (Tex. App.—Dallas 2007, no pet.). To successfully challenge the factual sufficiency of an adverse finding, MCC "must demonstrate the adverse finding is against the great weight and preponderance of the evidence." *Id.* In reviewing such a challenge, we consider and weigh all of the evidence, and set aside a verdict only if the finding is so against the great weight and preponderance of the evidence that it is "clearly wrong and unjust." *Id.* To successfully challenge the legal sufficiency of the trial court's findings, MCC must show that "the evidence establishes, as a matter of law, all vital facts in support of the issue." *Id.* Within this framework, we consider MCC's assertions of error.

The crux of MCC's argument is that Zapata was not an independent contractor.[2] A worker's status as an employee or independent contractor depends on whether the employer has "the right to control the progress, details, and methods of operations of the work." *Limestone Products Distribution, Inc. v. McNamara,* 71 S.W.3d 308, 312 (Tex. 2002). "Control" as would define a relationship as one of employer/employee is control over the details of the work itself and the worker's physical conduct, not simply the end result." *United States Fid. & Guar. Co. v. Goodson,* 568 S.W.2d 443, 447 (Tex. Civ. App.—Texarkana 1978, writ ref'd n.r.e.). The employer must control not merely the end sought, "but also the means and details of its accomplishment." *Limestone,* 71 S.W.3d at 312. Examples include when and where to begin and stop work, the regularity of hours, the amount of time spent on particular aspects of the work, the tools and appliances used to perform the work, and the physical method or manner of accomplishing the end result. *Thompson v. Travelers Indemnity Company of Rhode Island,* 789 S.W.2d 277, 278–79 (Tex.1990).

Texas courts generally consider five factors when analyzing whether an employer has a right to control a person's work: (1) the independent nature of the worker's business; (2) the worker's obligation to furnish the necessary tools, supplies, and materials to perform the job; (3) the worker's right to control the progress of the work except about final results; (4) the time for which the worker is employed; and (5) the method of payment, whether the worker is paid by unit of time or by the job. *Limestone,* 71 S.W.3d at 312 (citing *Pitchfork*

---

[2]There is no dispute that the policy excludes coverage for employees.

*Land & Cattle Company v. King,* 346 S.W.2d 598, 603 (1961)); *see also Hoechst Celanese Corporation v. Compton,* 899 S.W.2d 215, 220 (Tex. App.—Houston [14th Dist.] 1994, writ denied) (same). "It is not necessary that each of the above factors be present to find that the worker is an independent contractor." *Thompson,* 789 S.W.2d at 278–79. It is seldom that any one of these elements is decisive of the question. *See Farrell v. Greater Houston Transp. Co.,* 908 S.W.2d 1, 3 (Tex. App.—Houston [1st Dist.] 1995, writ denied). An employer may give direction as to the specifications of a job, details such as the position of a structure, or the character of materials and workmanship, and still maintain an independent contractor relationship. *Goodson,* 568 S.W.2d at 447.

Consideration of the first and third *Limestone* factors — the independent nature of the worker's business and the worker's right to control the progress of his work — supports the conclusion that Zapata was an independent contractor. The trial court found that Zapata was hired to perform clean up work on two excavation job sites over a three week period. The evidence adduced at trial reflects, and the trial court found that no one supervised the details of the cleanup work Zapata performed. At the beginning of the project, Mark Andregg explained the results he wished to accomplish. Then, Zapata was free to determine how he would separate the trash, where he would put the piles, how he would move the trash, and whether he would bring his own equipment and tools to separate the trash. Zapata was also afforded discretion to distinguish between items to be salvaged and those to be hauled away to a trash dump. Zapata established his own hours, and would usually show up when his bus arrived near the job site. Zapata was not required to wait for Mark Andregg

or anyone else to arrive, and typically, there was no one present when Zapata arrived and began work.

Zapata was assisting with the removal of a tree when he was injured. Although MCC argues Andregg asserted additional control over this particular task, the record supports the trial court's rejection of this argument. The trial court found that while Mark Andregg provided guidance on how to make certain cuts, Zapata was free to cut the tree as he pleased. Mark Andregg was operating an excavator at the time Zapata was injured.

The trial court also found that Andregg used independent contractors for almost all of its work and this was standard in the industry. Moreover, MCC was aware that Andregg used contract labor in accordance with the industry standard. The evidence reflects that MCC performed four premium audits of Andregg before the underlying suit was filed. The MCC auditor testified that most of MCC's insureds use sub-contractors. The auditor also testified about his audit reports, which state that Andregg uses "all subs" for their work and list the subcontractors by name. The audit immediately before the underlying lawsuit specifically identifies Zapata among the Andregg subcontractors.

The second *Limestone* factor requires consideration of the worker's obligation to furnish the tools, supplies, and materials necessary to perform the job. The trial court found that most of the work Zapata performed did not require tools; Zapata's work was primarily performed with his hands. Nonetheless, the trial court found that Zapata "borrowed" a ladder and a chainsaw from Andregg for the tree removal. While there is no dispute that Andregg supplied the ladder and the chainsaw, MCC challenges this finding as against the great

—6—

weight and preponderance of the evidence because the court characterized the tools as "borrowed" rather than "provided." This semantic distinction, however, is one without a difference. Even if Andregg "provided" tools for this isolated, single task, the fact remains that tools were not required for the majority of the tasks Zapata performed. Therefore, this factor adds very little to the analysis of Zapata's status.[3]

Next we consider the length of time Zapata was employed and the method by which he was paid. The trial court found and the record reflects that Zapata was hired for a short-term contract to perform clean up work on two properties Andregg was excavating. Both Zapata and Andregg intended this to be a short-term project, and Zapata was not promised any more work after the two projects ended. Neither Zapata nor Andregg intended that Zapata would work on any projects other than the two excavation job sites for which he had been hired. Zapata testified that he planned to take a job in the restaurant industry when the project was over. When Zapata was injured, he was on the last day of the short-term project that lasted less than five weeks.

The record also supports the trial court's findings regarding the financial relationship between Andregg and Zapata. Zapata was paid the industry rate for contract labor. Andregg's payments to Zapata were not made on a regular basis. Instead, Zapata was paid as portions of the project were completed. As it did with all of the subcontractors it hired, Andregg provided Zapata with an IRS form 1099. Andregg did not withhold any taxes or

---

[3] We also reject similar semantic challenges to the trial court's findings. For example, MCC argues the court improperly used the term "contract" to describe the relationship between Zapata and Andregg because there was no evidence of a written contract. Notwithstanding the absence of a writing, the record reflects that Zapata agreed to perform services for which Andregg agreed to compensation.

social security or provide Zapata with vacation or other benefits, and did not pay into the Texas unemployment fund on Zapata's behalf.

Despite the fact that the *Limestone* factors weigh heavily in support of the trial court's conclusion that Zapata was an independent contractor, MCC insists the trial court misapplied the law. According to MCC, application of the *Limestone* factors to determine Zapata's status can only be accomplished by focusing on the specific task Zapata was performing at the time of the accident. Thus, MCC seeks to have us isolate the single task of tree trimming and conduct the *Limestone* analysis only with reference to that task. We do not view the jurisprudence of this state to mandate such a strained and narrow application.

MCC's argument is premised on *Ochoa v. Winerich Motor Sales*, 127 Tex. 542, 94 S.W.2d 416, 418 (Tex. 1936). This reliance on *Ochoa* is misplaced.

In *Ochoa*, the court held that an individual who occasionally dropped by a local auto dealership to work as a mechanic was an employee rather than an independent contractor. In so concluding, the court found the individual had no continuous employment and "each job or task given him was separate employment." *Id.* The court held that "the nature of the particular employment during the performance of which the accident occurred rather than that of several prior employments, whether as independent contractor or as servant or employee" was determinative of the dealership's liability. *Id.*

But *Ochoa* does not stand for the proposition that each separate task performed during a working relationship is subject to individual analysis. Such an unworkable construct is not conducive to meaningful analysis, and conceivably could result in an

individual shifting between employee and independent contractor status countless times in a given work day. The trial court properly declined to conduct the *Limestone* analysis in such a vacuum.

In addition, the facts in *Ochoa* are clearly distinguishable from the facts in the instant case. Unlike *Ochoa*, this case does not involve several distinct periods of employment. Instead, Zapata was retained for two projects to be performed over a single period of time. The projects involved demolition, and the sorting and removal of demolition refuse, with the tree removal being only one of several tasks to be accomplished in the overall scope of the assignment.

The Fifth Circuit recently considered a similar case involving the same MCC policy exclusions at issue here. *See Mid-Continent Casualty Co. v. Davis*, 683 F.3d 651, 655– 660 (5th Cir. 2012). In *Davis*, the family of a construction worker who fell while framing a building brought a wrongful death action against the construction company. The construction company had a CGL policy with MCC that contained the same worker's compensation and employer's liability exclusions as in this case. *Id.* at 654. MCC filed a declaratory judgment action seeking a declaration that it had no duty to indemnify the construction company in the wrongful death case because the worker was an employee rather than an independent contractor. *Id.* The district court rejected MCC's argument, and concluded MCC owed a duty of indemnity because the worker was an independent contractor. *Id.*

The Fifth Circuit affirmed the district court's judgment. *Id.* at 660. Applying the *Limestone* factors, the court concluded the worker was properly characterized as an independent contractor, and therefore the claimed policy exclusions did not apply. *Id.* at 655–660. Significantly, the court applied the *Limestone* factors to the entire relationship between the worker and the company, rather than to the single task that occasioned the injury. *Id.*

For the reasons stated above, we conclude the trial court properly applied the *Limestone* factors and the evidence conclusively established that Zapata was an independent contractor rather than an employee. Therefore, the trial court's determination that MCC owes Andregg a duty to indemnify it for the judgment in the underlying lawsuit is not in error. MCC's issues are overruled. The judgment of the trial court is affirmed.

_____
MARTIN RICHTER
JUSTICE

110637F.P05



# Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

MID-CONTINENT CASUALTY
COMPANY, Appellant

No. 05-11-00637-CV      V.

ANDREGG CONTRACTING INC. AND
BACILIO ZAPATA, Appellees

Appeal from the 366th District Court of
Collin County, Texas. (Tr.Ct.No. 366-
02241-2008).
Opinion delivered by Justice Richter,
Justices Bridges and Lang participating.

      In accordance with this Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**. It is **ORDERED** that appellees ANDREGG CONTRACTING INC. AND
BACILIO ZAPATA recover their costs of this appeal from appellant MID-CONTINENT
CASUALTY COMPANY.


Judgment entered November 9, 2012.


_____
MARTIN RICHTER
JUSTICE