**Opinion issued February 25, 2014**



In The

# Court of Appeals

For The

# First District of Texas

———————————————

## NO. 01-12-00227-CV

———————————————

## LANI K. WHITE & CHARLES WHITE, Appellants

## V.

## DR & PA DELIVERANCE, LTD., F/K/A DELIVERANCE-PAR SERVICES, LTD., Appellee

---

### On Appeal from the 344th District Court
### Chambers County, Texas
### Trial Court Case No. CV25059-A

---

## MEMORANDUM OPINION

Lani K. White and Charles White appeal a summary judgment in favor of DR & PA Deliverance, Ltd., f/k/a Deliverance-Par Services, Ltd. (Deliverance). We affirm.

## Background

In 2005, the Whites bought a home in Baytown, Texas. Movers Specialty Services Inc. (MSS) was hired to move the Whites' appliances. MSS contracted with Deliverance to disconnect and reconnect the Whites' appliances, including their electric dryer. Deliverance assigned the job to Patrick Rusk, with whom Deliverance had entered into an independent contractor agreement. Rusk connected the electric dryer in the utility room of the Whites' new home. Almost four years later, a gas leak from an uncapped gas line in the Whites' utility room caused an explosion that injured Lani White.

The Whites sued MSS, Deliverance, Rusk, and others. They alleged Deliverance was negligent for failing to inspect, detect and correct the uncapped gas line, for failing to install proper caps for the shutoff valve, and for failing to warn the Whites about the dangers of an uncapped gas line.

Deliverance moved for summary judgment contending it was not vicariously liable for Rusk's alleged negligence because Rusk was an independent contractor, not an employee of Deliverance. In their summary-judgment response, the Whites argued that, notwithstanding the independent contractor agreement, there was a fact issue about whether Rusk was an independent contractor because (1) the independent contractor agreement had been modified by a second agreement between Deliverance and MSS and (2) other evidence extrinsic to the independent

2

contractor agreement raised a fact issue regarding whether Deliverance controlled the details of Rusk's work.

After a hearing, the trial court granted Deliverance's motion for summary judgment and severed the Whites' claims against Deliverance. The Whites appealed.

## Discussion

The Whites challenge the summary judgment on two grounds. They argue that an agreement between MSS and Deliverance specifying the procedures by which Deliverance was to perform MSS jobs modified Rusk's independent contractor agreement with Deliverance. They also contend that, notwithstanding the terms of the independent contractor agreement between Deliverance and Rusk, the summary-judgment evidence raised a fact issue about whether, at the time Rusk installed the Whites' dryer, Deliverance exercised actual control over the operative details of Rusk's work.

### A. Standard of Review and Summary Judgment Standard

We review a trial court's grant of summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005) (citing *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003)). When reviewing a summary judgment, we must (1) take as true all evidence favorable to the nonmovant, and (2) indulge every reasonable inference and resolve any doubts in

3

the nonmovant's favor. *Id.* In a traditional summary judgment motion, the movant has the burden to show that no genuine issue of material fact exists and that the trial court should grant judgment as a matter of law. TEX. R. CIV. P. 166(a), (c); *KPMG Peat Marwick v. Harrison Cnty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999).

## B.    Applicable Law

Under the doctrine of respondeat superior, an employer may be vicariously liable for the negligence of its agent or employee who acts within the scope of his employment even though the employer did not personally commit a wrong. *St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 542 (Tex. 2002); *Baptist Mem'l Hosp. Sys. v. Sampson*, 969 S.W.2d 945, 947 (Tex. 1998). But an independent contractor has sole control over the means and methods of his work and, therefore, the individual or entity that hires the independent contractor is generally not vicariously liable for the negligence of that person. *Wolff*, 94 S.W.3d at 542.

The right to control the details of the work is the supreme test for whether a master-servant relationship exists and whether the rule of vicarious liability applies. *Id.* (citing *Golden Spread Council, Inc. No. 562 of Boy Scouts of Am. v. Akins*, 926 S.W.2d 287, 290 (Tex. 1996)). A right of control requires more than

> a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually

4

reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail. There must be such a retention of a right to supervision that the contractor is not entirely free to do the work in his own way.

*Koch Refining Co. v. Chapa*, 11 S.W.3d 153, 155 (Tex. 1999) (quoting Restatement (Second) of Torts § 414 cmt. c (1965)). Employers may direct when and where an independent contractor does the work and may request information about the work, but an employer is liable for the independent contractor's torts only if the employer controls the details and methods of the independent contractor's work to such an extent that the contractor cannot perform the work as he so chooses. *Koch*, 11 S.W.3d at 155–56; *Weidner v. Sanchez*, 14 S.W.3d 353, 373 (Tex. App.—Houston [14th Dist.] 2000, no pet.).

A contract expressly providing that a person is an independent contractor "is determinative of the [parties'] relationship absent evidence that the contract is a mere sham or subterfuge designed to conceal the true legal status of the parties or that the contract has been modified by a subsequent agreement between the parties." *Farlow v. Harris Methodist Fort Worth Hosp.*, 284 S.W.3d 903, 911 (Tex. App.—Fort Worth 2009, pet. denied) (citing *Newspapers, Inc. v. Love*, 380 S.W.2d 582, 588–90, 592 (Tex. 1964)); *Weidner*, 14 S.W.3d at 373.

When a contract establishes an independent contractor relationship, evidence outside the contract must be produced to show that despite the contract terms, the true operating agreement vested the right of control in the principal. *Id.* at 374

(citing *Farrell v. Greater Houston Transp. Co.*, 908 S.W.2d 1, 3 (Tex. App.—Houston [1st Dist.] 1995, writ denied)). Neither sporadic action directing the details of the work nor an occasional assertion of control will destroy the original contract forming the basis of the independent contractor relationship. *Id.* The assumption of exercise of control must be so persistent and the acquiescence therein so pronounced as to raise an inference that when the accident occurred, the parties by implied consent had agreed that the principal might have the right to control the details of the work. *Id.*

## C. Analysis

*The Independent Contractor Agreement created an independent contractor relationship*

Deliverance and Rusk entered into an "Independent Contractor Agreement," in which they agreed that "[Rusk] is an independent contractor, and not the employee or agent of [Deliverance] for any purpose whatsoever." Other key terms of the agreement provide:

- Deliverance "shall have no right to, and shall not control the manner, or prescribe the method, of accomplishing the portion of [Deliverance's] business which shall be performed by [Rusk] pursuant to this Agreement."

- Rusk has "the right to refuse acceptance of any or any part of particular assignments submitted to the Contractor for service" for *any* reason, provided he submits the reason in writing.

6

- For jobs tendered, Rusk "shall provide the necessary vehicles, labor and materials (except lumber, paper pads) to complete the assignment."

- Any labor hired by Rusk to complete jobs shall be hired at Rusk's expense, and persons employed by Rusk to perform such labor "shall be under the sole direction and control of [Rusk]."

- Rusk shall complete all documents in accordance with guidelines required by Deliverance.

- Rusk shall furnish, at his expense, worker's compensation insurance for himself and his employees.

- Rusk agrees to obtain at his expense automobile liability insurance and general liability insurance.

- Rusk was to be paid 40% of the amount Deliverance invoiced the customer for each job Rusk performed.

We agree with Deliverance that the independent contractor agreement created an independent contractor relationship between Deliverance and Rusk. We thus turn to the question of whether the Whites met their burden to adduce summary-judgment evidence raising a fact issue about whether the agreement should not be determinative of the parties' relationship either because it was modified by a subsequent agreement or because other extrinsic evidence raises a fact issue about whether Deliverance exercised control over the details and methods of Rusk's work, despite the terms of the independent contractor agreement.

7

*The Whites' summary judgment evidence failed to raise a fact issue regarding whether the independent contractor agreement is determinative*

a. The MSS agreement and MSS's Suggested Operating Procedures

The Whites argue that Rusk's independent contractor agreement was modified when Deliverance and MSS entered into their own contract, in which Deliverance agreed to perform all work for MSS in accordance with MSS's Suggested Operating Procedures and manual. They contend that the step-by-step procedures set forth in MSS's service guidelines dictated the details and methods of the work of those working for Deliverance, including Rusk, to the extent that they wrested control over the methods and details of the work from Rusk. The Whites' summary-judgment evidence showed that Deliverance trained Rusk on MSS's guidelines and policed compliance with them by periodically circulating memoranda reminding Rusk that he would be docked pay for failing to comply.

We note, first, that the record contains only an unsigned version of an agreement between MSS and Deliverance Movers Service ("DMS"), which is not a party to this appeal. The record contains no evidence of the nature of the relationship between DMS and Deliverance, nor does it indicate that MSS and DMS intended to be bound by the agreement despite the lack of signatures. The Whites contend the agreement is binding on Deliverance because Deliverance produced it in response to a request for production. We indulge doubts and reasonable inferences in the Whites' favor, but, here, the Whites urge us to stack

8

one inference upon another: (1) the contract was binding on DMS despite the lack of signatures or evidence demonstrating an intent to be bound in their absence and (2) the contract also bound Deliverance, despite the fact that it is nowhere mentioned in the agreement, because Deliverance is a successor to DMS. *See Marathon Corp. v. Pitzner*, 106 S.W.3d 724, 728 (Tex. 2003) (an inference stacked only on other inferences is not legally sufficient evidence); *Zavala v. Burlington N. Santa Fe Corp.*, 355 S.W.3d 359, 373 (Tex. App.—El Paso 2011, no pet.) ("Stacking inferences is insufficient to create a fact issue precluding summary judgment.").

### b. Other extrinsic evidence

The Whites contend that summary-judgment evidence other than the MSS agreement and guidelines raised a fact issue regarding whether Rusk's independent contractor agreement was determinative of the parties' relationship. Deliverance, the movant, relied primarily on Rusk's independent contractor agreement and the affidavit of Paul Arena to prove that Rusk independently controlled the details and methods of his work and that it was entitled to judgment as a matter of law. In response, the Whites argued that Rusk's affidavit raised a fact issue as to Rusk's independent contractor status.

We examine the summary-judgment evidence against the five *Limestone* factors: (1) the independent nature of the worker's business; (2) the worker's

obligation to furnish necessary tools, supplies, and materials to perform the job; (3) the worker's right to control the progress of the work except about final results; (4) the time for which the worker is employed; and (5) the method of payment, whether the worker is paid by time or by the job. *Limestone Prods. Distrib., Inc. v. McNamara*, 71 S.W.3d 308, 312 (Tex. 2002).

In addition to the independent contractor agreement, the terms of which are outlined above, Deliverance offered the Arena affidavit, which established the following undisputed facts:

- Rusk had the right to refuse all or any part of a work assignment.
- No employees or agents of Deliverance oversaw or were present while Rusk worked at the Whites' home, and none inspected Rusk's work.
- Rusk was paid on a form 1099 and did not receive W-2 forms.
- Rusk received no pay if there was no work, and Deliverance did not pay Rusk for vacation time, sick leave or holidays.
- Rusk was responsible for hiring, supervising and paying any labor required to complete his work.
- Rusk was responsible for all costs and expenses incurred by him or any of his employees while completing his work.
- Rusk paid state and federal income tax, unemployment insurance, and Social Security benefits for himself and his employees.
- Rusk maintained general liability insurance naming Deliverance as an insured.
- Rusk was liable for any property damage he or his employees caused.[1]

---

[1] Arena also averred that "Rusk was an independent contractor hired by Deliverance," but we accord that legal conclusion no evidentiary value. The same is true for Rusk's statement in his affidavit that "Deliverance controlled all the specifics of my work." *See Anderson v. Snider*, 808 S.W.2d 54, 55 (Tex. 1991) (legal conclusions and conclusory statements are not proper summary-judgment evidence).

The Whites adduced no summary-judgment evidence controverting these facts. Rather, they offered Rusk's affidavit, which makes the following key points:

- Rusk was required to report to Deliverance's office by 8:00 a.m. six days a week and worked up to 80 hours each week.
- Each morning, Deliverance gave him a list of jobs that he was required to complete by the end of the day.
- Rusk was required to call Deliverance dispatch at the completion of each individual job he completed throughout the day.
- Deliverance provided Rusk with 6 weeks of training on packing, crating and installation policies and procedures. Rusk was required to follow these procedures and was docked in pay if he did not.
- Deliverance required Rusk to wear uniforms bearing Deliverance's logo, fill out a Deliverance checklist indicating that he had completed various aspects of the job and, when introducing himself to customers, was required to "announce that [he] worked for Deliverance."
- Rusk worked exclusively for Deliverance for nearly four years, during which time he considered himself a Deliverance employee.

The Whites also adduced evidence that Rusk entered into a non-competition agreement with Deliverance.

The first *Limestone* factor relates to the independent nature of the business and, in particular, who has the right to control the details and methods of the work. *Limestone*, 71 S.W.3d at 312; *Wolff*, 94 S.W.3d at 542. The summary-judgment record demonstrates that Rusk could refuse any job, was solely responsible for deciding whether to hire additional labor for any job, and performed the work without physical oversight or inspection by Deliverance. Deliverance's evidence thus demonstrated that Rusk was "free to do the work in his own way." *See Koch*, 11 S.W.3d at 155; *Limestone*, 71 S.W.3d at 312.

11

The Whites nevertheless argue that Rusk's business was not independent because Rusk (1) was required to follow detailed procedures, report to Deliverance's office by 8:00 a.m. each morning, work long hours, and call dispatch at the completion of each job, and (2) believed himself to be an employee of Deliverance and gave customers the impression that he was a Deliverance employee. The evidence that Deliverance exercised the right to determine when Rusk would begin work, to require reports, and to suggest methods for accomplishing the work safely and cost-effectively, even taken together, falls short of raising a fact issue because none of it suggests that Deliverance persistently controlled the methods and operative details of the work. *See Limestone*, 71 S.W.3d at 312 (affirming summary judgment as to independent contractor status where worker called Limestone daily to see if there was any work, was told where to pick up and deliver loads, was given deadlines for completing each job, and was required to use load tickets bearing Limestone logo for each job); *Hoechst-Celanese Corp. v. Compton*, 899 S.W.2d 215, 221 (Tex. App.—Houston [14th Dist.] 1994, writ denied) (noting that key inquiry is control, not a worker's belief as to his status or general supervision of time or place of work, or manner of worker's dress); *Farlow*, 284 S.W.3d at 916 (hospital bylaws contractually requiring doctor to provide treatment in specified ways were results-oriented only and did not raise a fact issue regarding independent contractor relationship); *Koch*,

12

11 S.W.3d at 155 (right to order work stopped or resumed, receive progress reports, make suggestions or recommendations, prescribe alterations does not mean that contractor is controlled as to his methods of work or as to operative detail).

The evidence relating to the second factor—the obligation to furnish necessary tools and materials—favors Deliverance. The undisputed evidence is that Rusk was responsible for the expense of necessary labor, tools, and materials. The record shows that Deliverance provided some materials to Rusk, apparently to take advantage of volume discounts, but the Whites do not dispute that Rusk nevertheless was obligated to pay for them.

The third factor—the right to control the progress of the work—also suggests Rusk was an independent contractor. Deliverance exercised the right to tell Rusk when to start work and which jobs to do—Rusk was expected to be in the office at 8:00 a.m. to pick up daily job assignments—but this is not inconsistent with an independent contractor relationship. *Koch*, 11 S.W.3d at 155 (right of control requires more than a general right to order work stopped or resumed). Nor is the fact that Rusk was required to inform Deliverance that he had completed work. *Id.* (right of control requires more than right to receive reports). And it is undisputed that Rusk, after learning which jobs were assigned to him, was responsible for contacting customers and scheduling a time in which to do the job.

Under the fourth factor, we examine the time for which the person is employed. Rusk worked exclusively for Deliverance for nearly four years, and the Whites rely heavily on this fact, and the existence of a non-competition agreement, to argue for employee status. But courts have concluded persons were independent contractors in cases involving far longer tenures. *See Mid-Continent Cas. Co. v. Davis*, 683 F.3d 651, 658 (5th Cir. 2012) (finding workers were independent contractors despite 17 and 18 year tenures where they got paid only if they worked). Likewise, the existence of a non-compete is unrelated to the central issue of control over methods and operative detail of the work.

The evidence relevant to the fifth factor is undisputed. Rusk was paid by the job and only upon completion of a job, receiving no pay if there was no work. In sum, application of the *Limestone* factors requires affirmance.

The Whites rely heavily on *Weidner v. Sanchez*, 14 S.W.3d 353 (Tex. App.—Houston [14th Dist.] 2000, no pet.) to argue for a different result. There, Weidner, a cab driver, and Liberty Cab had a Daily Pay Agreement that recited that Weidner was an independent contractor. *Weidner*, 14 S.W.3d at 374. The court of appeals held there was ample evidence that a subsequent agreement between Liberty Cab and Metro modified the Daily Pay Agreement and that Liberty exercised such control over Weidner that he was not an independent contractor in the transaction at issue. *Weidner* is different for two reasons. First,

14

here, we have concluded that the summary-judgment evidence did not raise a fact issue as to whether the MSS agreement modified Rusk's independent contractor relationship. Second, and more important, in *Weidner,* the cab driver was paid by the hour and the details of his work—driving—were dictated by Liberty Cab to the degree that "precious little was left to Weidner's discretion on the day of the accident." *Id*. at 375 (noting that "a salaried school bus driver probably has more discretion than Weidner"). Here, while Rusk was required to follow results-oriented procedures, go to Deliverance's office each morning, meet deadlines, and periodically report on the progress of his work, there is no indication that he lacked discretion as to the operative details of his work—installing the Whites' dryer. *See Farlow*, 284 S.W.3d at 916 (hospital bylaws contractually requiring doctor to provide treatment in specified ways did not raise a fact issue as to independent contractor status); *Koch*, 11 S.W.3d at 155 (right to order work stopped or resumed, receive progress reports, make suggestions or recommendations, prescribe alterations does not mean that contractor is controlled as to his methods of work or as to operative detail).

15

## Conclusion

We affirm the trial court's judgment.

Rebeca Huddle
Justice

Panel consists of Chief Justice Radack and Justices Bland and Huddle.