**Opinion issued August 20, 2015**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-14-00789-CV

———————————

**CITY OF HOUSTON, Appellant**

**V.**

**ROBERT A. SMITH, Appellee**

---

**On Appeal from the 61st Judicial District Court**
**Harris County, Texas**
**Trial Court Case No. 2011-46461**

---

**MEMORANDUM OPINION**

This is the second interlocutory appeal in Appellee Robert Smith's Texas

Whistleblower Act lawsuit against Appellant City of Houston. In the first appeal,

we affirmed the trial court's denial of the City's plea to the jurisdiction. *See City*

*of Houston v. Smith*, No. 01-13-00241-CV, 2014 WL 768330 (Tex. App.—

Houston [1st Dist.] Feb. 25, 2014, no pet.) (mem. op.). The City now appeals the district court's denial of its motion for summary judgment, arguing that Smith failed to raise a fact issue precluding summary judgment on his whistleblower claim.[1] We hold that the trial court lacked subject-matter jurisdiction because Smith failed to raise a fact issue regarding whether he reported a violation of law by a public employee. We vacate the trial court's order denying the City's motion for summary judgment and dismiss the case.

## Background

Smith has worked for the Houston Police Department ("HPD") for over 26 years. He initially worked in the Identification Division, which handles fingerprint evidence, eventually reaching the rank of deputy administrator.[2]

In December 2008, HPD hired Ron Smith & Associates, Inc. ("RS & A") to handle parts of the fingerprint identification process. RS & A performed day-to-day activities and functions of HPD's latent fingerprint lab. RS & A employees conducted fingerprint searches in the Automated Fingerprint Identification System ("AFIS"). Based on RS & A technicians' work in identifying fingerprints, RS & A generated reports showing the latent fingerprint lab's findings. RS & A also

---

[1] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8) (recognizing interlocutory appeal when trial court denies plea to jurisdiction by governmental unit) (West 2015); *Thomas v. Long*, 207 S.W.3d 334, 339 (Tex. 2006) (may consider interlocutory appeal from denial of summary-judgment motion based on government unit's challenge to subject matter jurisdiction).

[2] Due to reclassifications, the deputy administrator rank is now the rank of lieutenant.

provided a technical audit of the Latent Fingerprint Processing/Comparison Unit and concluded that it needed to be substantially overhauled.

In January 2010, Smith became acting administrator of the Identification Division.[3] But the acting administrator job was only a temporary job assignment. Accordingly, Smith would receive the $8 pay raise associated with the assignment only temporarily, while he was serving in that role. According to Smith's deposition testimony, he became aware, during his tenure as acting administrator, of various alleged errors and violations of law by RS & A.

Smith reported his concerns about RS & A to his HPD superiors, including then-Assistant Chief Vicki King. He later detailed his concerns in a September 2010 memorandum that he described as "a summary of present and future concerns of the Identification Division." The memorandum addressed a variety of topics, including low employee morale, RS & A's training program and staffing decisions, the manner in which RS & A performed fingerprint searches, and grammatical errors in RS & A's reports, among others:

- "**Reduction of on-site RS & A Personnel**: Serious doubt exists whether a significantly reduced RS & A staff can meet the day-to-day operational obligations and continue to address backlog, re-analysis casework, training, etc."

- "**Manipulation of certain AFIS functions in order to speed search process**: Against the wishes of HPD ID Division and recommendations of

---

[3] Due to reclassifications, the acting administrator rank is now the rank of acting captain.

Cogent engineers, RS & A have turned off the latent to latent search capability, latent search orientation has been significantly reduced, and other pertinent functions dealing with reducing search capabilities have been turned off or limited. This has since been rectified, albeit approximately 2 months after information should have been disseminated by RS & A."

- **"Quality of Administrative Reviews**: Numerous technical and grammatical errors about in recent reviews of RS & A Analysis Reports. Corrective Action Reports are pending."

- **"RS & A Exit Strategy**: Assuming funding allows RS & A to continue their contractual obligations through June 2011, no plans to address the void of Latent Print Examiners should their services be terminated."

- **"RS & A Priorities now** – 280 casework versus current & DA requests. Note: information on the 280 project is presently being reviewed as an IAD complaint. This issue needs to be revisited because RS & A are prioritizing any old case, claiming they are part of the 280 project. To my knowledge, the 280 project was completed several months prior to RS & A arrival (January, 2009)."

- **"Segmented and unstructured Evidence Processor Training Program**: Recently we have been apprised that RS & A trainer, Matt Schwartz[,] will not be available during certain weeks of the training period. Also, originally the training was scheduled for 6 months, and then it changed to 3 months, then to 4 months, etc. The training program is being created in a piece-meal fashion, indicating there is no planned structured program. Basically, it is being made up as they go which is contrary to our expectations."

- **"Latent print images in AFIS Queue**: Serious concerns with the large quantity of unsolved latent prints waiting to be checked by RS & A. These prints, some of which are robbery & murder cases entered at least 5 months ago, were entered into AFIS by HPD personnel at the request of RS & A. The status on these prints indicates they have not been checked. Of importance, is that anything listed in the queues reflects prints that have not been added to the database. This means a prisoner's prints will not be checked against these unsolved latent prints if the prisoner came through our jail during that 5 month time period."

- **"Morale**: With the recent problems and concerns that have plagued the Latent Print Unit, low employee morale is most likely paramount. Employees are concerned about their "forensic" futures/careers with the circulating rumors of the dismantling of the ID Division, creation of a "police free" forensic services department, merger with Class A ranks, cessation of LPE training, continuing and pending IAD investigations, and the perception of personnel's ineptness and inadequate technical skills in eyes of the Department & RS & A. Management personnel are also perplexed by their lack of involvement in rendering decisions, knowledgeable input, etc."

In October 2010, King told Smith that he was being reassigned to the Property Division. In November 2010, Smith moved to the Property Division, ceased serving as acting administrator of the Identification Division, stopped receiving the $8 pay increase that he had received in that role, and was reclassified as a lieutenant.

According to Smith's summary-judgment evidence, he believed that this move to the Property Division was temporary and part of a special project, and that he would return to the Identification Division upon the project's completion. But on May 27, 2011, Smith acknowledged in writing that his assignment to the Property Division was a permanent transfer. Smith filed a grievance regarding the transfer. Then he sued the City, alleging that the transfer was an adverse personnel action that violated the Texas Whistleblower Act.

The City filed a traditional motion for summary judgment, arguing that the trial court lacked jurisdiction because Smith could not raise a fact issue regarding three of the five elements of a whistleblower claim: that Smith (1) reported a

5

violation of law in good faith (2) to an appropriate law enforcement agency, and (3) suffered an adverse personnel action. Smith responded to the City's motion, arguing that more than a scintilla of evidence supported each of the disputed elements of his claim. The trial court denied the City's motion for summary judgment, and the City appealed.

**Discussion**

In five issues, the City contends that the trial court erred in denying its motion for summary judgment because Smith's summary-judgment evidence failed to raise a fact issue regarding the elements of his whistleblower claim and therefore failed to raise a fact issue regarding the City's jurisdictional challenge.

## A.    Standard of Review

In a traditional summary judgment motion, the movant has the burden to show that no genuine issue of material fact exists and that the trial court should grant judgment as a matter of law. TEX. R. CIV. P. 166a(c); *KPMG Peat Marwick v. Harrison Cnty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999). A defendant moving for traditional summary judgment must conclusively negate at least one essential element of each of the plaintiff's causes of action or conclusively establish each element of an affirmative defense. *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997).

A summary-judgment motion challenging jurisdiction may challenge either the pleadings or the existence of jurisdictional facts. *Montrose Mgmt. Dist. v. 1620 Hawthorne, Ltd.*, 435 S.W.3d 393, 402 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) (citing *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226–27 (Tex. 2004)). When such a motion challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties to resolve the jurisdictional issues raised, as the trial court is required to do. *Id.* (citing *Miranda*, 133 S.W.3d at 227). If a fact question is presented by the evidence regarding a jurisdictional issue, then the trial court is precluded from granting summary judgment on the jurisdictional challenge, and fact issues will be resolved by the fact-finder. *Id.* (citing *Miranda*, 133 S.W.3d at 227–28). However, if the relevant evidence is undisputed or fails to raise a genuine fact issue regarding the jurisdictional challenge, the trial court grants summary judgment as a matter of law. *Id.* (citing *Miranda*, 133 S.W.3d at 228).

We review a trial court's decision to grant or to deny a motion for summary judgment de novo. *See Tex. Mun. Power Agency v. Pub. Util. Comm'n*, 253 S.W.3d 184, 192 (Tex. 2007).

**B.   Applicable Law**

**1.    Sovereign Immunity and Subject-Matter Jurisdiction**

In Texas, sovereign or governmental immunity deprives a trial court of subject-matter jurisdiction over lawsuits against the State or other governmental units unless the State consents to suit. *Rusk State Hosp. v. Black*, 392 S.W.3d 88, 95, 102 (Tex. 2012) ("We have said on numerous occasions that sovereign immunity deprives courts of subject-matter jurisdiction."); *Miranda*, 133 S.W.3d at 224. Whether a court has subject-matter jurisdiction is a question of law that we review de novo. *Miranda*, 133 S.W.3d at 226; *Tex. Natural Res. Conservation Comm'n v. IT–Davy*, 74 S.W.3d 849, 855 (Tex. 2002).

**2.    The Texas Whistleblower Act**

The Texas Whistleblower Act expressly waives the government's immunity for suits alleging a violation of the Act. TEX. GOV'T CODE ANN. § 554.0035 (West 2012). The Act prohibits a state or local governmental entity from taking an adverse personnel action against "a public employee who in good faith reports a violation of law by the employing governmental entity or another public employee to an appropriate law enforcement authority." *Id.* § 554.002(a) (West 2012). The Act defines "public employee" as "an employee or appointed officer other than an independent contractor who is paid to perform services for a state or local governmental entity." *Id.* § 554.001(4) (West 2012).

### 3. Employee Versus Independent Contractor

The determination of whether a worker is an employee or an independent contractor depends on who has the right to control the progress, details, and methods of operations of the work. *See Limestone Prods. Distrib., Inc. v. McNamara*, 71 S.W.3d 308, 312 (Tex. 2002). In the absence of a contract assigning the right to control, a party can prove the right of control by evidence of actual control over the manner in which the work is performed. *Dow Chem. Co. v. Bright*, 89 S.W.3d 602, 606 (Tex. 2002).

The focus is on who has the right to control the *details and means* of the work. *Limestone*, 71 S.W.3d at 312 (citing *Thompson v. Travelers Indem. Co.*, 789 S.W.2d 277, 278 (Tex. 1990)); *Weidner v. Sanchez*, 14 S.W.3d 353, 373 (Tex. App.—Houston [14th Dist.] 2000, no pet.). An independent contractor is one who, in pursuit of an independent business, undertakes specific work for another using his own means and methods without submitting to the control of the other person as to the details of the work. *Olivares v. Brown & Gay Eng'g, Inc.*, 401 S.W.3d 363, 368 (Tex. App.—Houston [14th Dist.] 2013), *aff'd*, No. 13-0605, --- S.W.3d ---, 2015 WL 1897646 (Tex. Apr. 24, 2015). In contrast, an "employer controls not merely the end sought to be accomplished, but also the means and details of its accomplishment." *Limestone*, 71 S.W.3d at 312 (citing *Thompson*, 789 S.W.2d at 278). And a "possibility" of control is not evidence of a

9

"right to control." *Coastal Marine Serv. of Tex., Inc. v. Lawrence*, 988 S.W.2d 223, 226 (Tex. 1999); *City of Houston v. Ranjel*, 407 S.W.3d 880, 890 (Tex. App.—Houston [14th Dist.] 2013, no pet.).

Courts consider several factors in determining whether someone is an employee or an independent contractor, including:

(1)  the independent nature of the person's business;

(2)  the person's obligation to furnish necessary tools, supplies, and material to perform the job;

(3)  the right to control progress of the work, except as to final results;

(4)  the time for which the person is employed; and

(5)   the method of payment, whether by time or by the job.

*Texas A & M Univ. v. Bishop*, 156 S.W.3d 580, 584–85 (Tex. 2005).  "It is not necessary that each of the above factors be present to find that the worker is an independent contractor."  *Mid-Continent Cas. Co. v. Andregg Contracting, Inc.*, 391 S.W.3d 573, 576 (Tex. App.—Dallas 2012, pet. denied).  When the controlling facts are undisputed, whether the relationship is that of an employee or of an independent contractor is a question of law.  *Bishop*, 156 S.W.3d at 585.

**C.    Analysis**

In its third issue on appeal, the City asserts for the first time that Smith's whistleblower claim must be dismissed because Smith did not report purported violations of law by an "employing governmental entity" or "another public

employee."  *See* TEX. GOV'T CODE ANN. § 554.002(a) (employee alleging whistleblower claim must have reported an alleged violation of the law "by the employing governmental entity or another public employee . . . .").  The City did not move for summary judgment on this ground.  However, because this argument implicates subject matter jurisdiction, the City may raise it for the first time on interlocutory appeal.  *See Dallas Metrocare Servs. v. Juarez*, 420 S.W.3d 39, 41 (Tex. 2013) (per curiam) (stating that court of appeals should consider additional grounds of immunity on appeal regardless of whether raised in trial court); *Black*, 392 S.W.3d at 94–97 (sovereign immunity deprives courts of subject-matter jurisdiction); *Univ. of Tex. M.D. Anderson Cancer Ctr. v. Baker*, 401 S.W.3d 246, 262 (Tex. App.—Houston [14th Dist.] 2012, pet. denied) (governmental entity may include ground for plea to jurisdiction for first time on interlocutory appeal).

The City will prevail, and we will dismiss the case only if "the record conclusively negate[s] jurisdiction."  *Black*, 392 S.W.3d at 100.  In other words, we must dismiss the suit if the record conclusively shows that Smith did not report a violation of law by his employing governmental entity or another public employee. *See id.* at 96.

## 1. No reported violations of law by HPD or King

As a preliminary matter, we note that Smith reported no purported violations of law by his employing governmental entity—HPD. Rather, all of the purported violations of law reported by Smith were by RS & A.

In his appellate brief, Smith contends that he did report violations of law by then-Assistant Chief King—an HPD employee—in addition to violations of law by RS & A. In particular, Smith argues in his brief that King violated the law when she directed Smith's wife, also an HPD employee, to alter case notes. However, no evidence in the record supports Smith's contention that he reported these complaints regarding King. Rather, the record conclusively shows that Smith reported only purported violations of law by RS & A. First, Smith's petition and response to the City's motion for summary judgment reference only alleged violations of law by RS & A. And more importantly, Smith admitted in his deposition that all of the alleged violations of law were committed by RS & A. We therefore conclude that the summary-judgment record contains no evidence that Smith reported any alleged violations of law by HPD, the employing governmental entity, or King, a public employee.

## 2.     RS & A was not a public employee under the Whistleblower Act

Smith does not contend that RS & A is a governmental entity, but does argue that RS & A was a "public employee" under the Whistleblower Act.

Under the Act, a "public employee" is "an employee or appointed officer other than an independent contractor who is paid to perform services for a state or local governmental entity."  TEX. GOV'T CODE ANN. § 554.001(4).  In determining whether a person is an employee or an independent contractor, the focus is on who has the right to control the details of the work.  *Limestone*, 71 S.W.3d at 312.  In making this determination, we consider the earlier-described *Bishop* factors.  *See Bishop*, 156 S.W.3d at 584–85.

We conclude that the summary-judgment evidence conclusively demonstrates that RS & A was an independent contractor and therefore not a "public employee" under the Act.  Under the first and third *Bishop* factors, we consider the independent nature of RS & A's business and its right to control the progress of its work, except as to final results, in the fingerprint lab.  *See Bishop*, 156 S.W.3d at 584–85.  There is ample undisputed evidence that demonstrates the independent nature of RS & A's business and that RS & A had the right to control the details of its work.

First, Smith's deposition testimony demonstrates that RS & A, not HPD, controlled the details of RS & A's work.  Smith admitted that RS & A was a

private entity—a "consulting firm" hired to handle "day-to-day activities and functions of [the] latent print lab." Smith's deposition testimony demonstrated that RS & A had "technical authority" over the lab. For example, in meetings, it was RS & A who told Smith, the HPD Identification Division acting administrator, "what [RS & A] thought that we needed to change in our process."

Second, Smith's September 2010 memorandum setting forth his concerns about RS & A itself demonstrates that RS & A exercised control over the details of its work. In it, Smith complained about RS & A's decisions regarding its own staffing, including that RS & A controlled those details. Smith's memo also complained about RS & A's decisions regarding the manner in which it completed its work. For example, Smith complained of RS & A's "Manipulation of certain AFIS functions in order to speed search process," noting that RS & A had done this "[a]gainst the wishes of HPD ID Division and recommendations of Cogent engineers." He also complained that RS & A prioritized old cases. This indicates that RS & A, not HPD, controlled the details of RS & A's work. Finally, Smith's memorandum complained about the manner in which RS & A created and implemented a training program.

Third, RS & A's letter response to Smith's September 2010 memorandum also demonstrates that RS & A, not HPD, controlled RS & A's work. RS & A's president wrote:

14

> All of the decisions and or changes made by RS & A team members to the operational or technical workflow of the HPD Latent Print Laboratory have been based on our considerable collective experience. The changes were designed to bring the Latent Print Unit up to a level commensurate with other agencies of their size.

This letter, like Smith's deposition testimony and September 2010 memorandum, all show that RS & A controlled the details of its work, to the exclusion of HPD. Because the record demonstrates the independent nature of RS & A's business and its right to control the progress of its work, we conclude that the first and third *Bishop* factors weigh in favor of determining that RS & A was an independent contractor. *See Olivares*, 2015 WL 1897646, at *7 (evidence showed company was independent contractor where it had discretion to design tollway's signage and road layouts); *White v. DR & PA Deliverance, Ltd.*, No. 01-12-00227-CV, 2014 WL 767218, at *2 (Tex. App.—Houston [1st Dist.] Feb. 25, 2014, no pet.) (mem. op.) ("[A]n independent contractor has sole control over the means and methods of his work . . . . The right to control the details of the work is the supreme test for whether a master–servant relationship exists . . . ."); *City of Roman Forest v. Stockam*, 141 S.W.3d 805, 809–10 (Tex. App.—Beaumont 2004, no pet.) (holding municipal judge was not "public employee" under Whistleblower Act where there was no evidence that City had right to control details of work and alleged effort to control him did not demonstrate control).

Under the second *Bishop* factor, we consider RS & A's obligation to furnish necessary tools, supplies, and material to perform the job. *See Bishop*, 156 S.W.3d at 584. Here, the record demonstrates that RS & A furnished some of the tools and materials necessary to perform its duties in the fingerprint lab. RS & A used its own system and forms to create reports. On the other hand, the record shows that RS & A also used some of HPD's tools, supplies, and material to perform its work. We thus conclude that the second *Bishop* factor is neutral.

Under the fourth and fifth *Bishop* factors, we consider the time for which RS & A was employed and whether RS & A was paid by time or by the job. *See Bishop*, 156 S.W.3d at 585. According to HPD's June 2010 written request for city council action, RS & A was first hired in December 2008 for a two-year term, which was extended to December 2012 with an additional two-year option. This request also demonstrated that the City paid RS & A a flat fee for the contract term. Because the summary-judgment evidence demonstrates that HPD hired RS & A for the length of time it would take to complete its overhaul of the fingerprint lab and paid RS & A a flat fee, we conclude that the fourth and fifth *Bishop* factors weigh in favor of determining that RS & A was an independent contractor. *See Olivares*, 401 S.W.3d at 378 (concluding engineering company was independent contractor where evidence showed governmental entity hired company for set amount of time—time it took to complete tollway project—and

16

paid flat fee); *Mid-Continent*, 391 S.W.3d at 577 (evidence that worker was hired for short-term contract and was not promised any additional work after projects ended weighed in favor of concluding that he was independent contractor).

In an effort to raise a fact issue regarding RS & A's employee status, Smith contends that he adduced summary-judgment evidence demonstrating that one of his duties was "to oversee not only HPD employees, but the employees of RS & A." Smith also contends that RS & A's employees were HPD employees, rather than independent contractors, because HPD could terminate or remove them from working in the latent fingerprint lab. Even assuming that the summary-judgment record supports Smith's contentions, this evidence does not show the type of control necessary to classify RS & A's employees as HPD employees rather than independent contractors as opposed to the mere right to control the end sought to be accomplished. *See Limestone*, 71 S.W.3d at 312 (in employer-employee relationship, "employer controls not merely the end sought to be accomplished, but also the means and details of its accomplishment."); *Johnson v. BP Prods. N. Am., Inc.*, No. 01-12-00072-CV, 2013 WL 177412, at *8 (Tex. App.—Houston [1st Dist.] Jan. 17, 2013, no pet.) (mem. op.) (evidence that general contractor had ability to fire subcontractor's employees did not amount to control over means, methods, and details of subcontractor's work).

In addition, Smith argues that RS & A was an employee because HPD employees corrected errors in RS & A reports and scheduled and supervised RS & A employees. But Smith failed to adduce any evidence of specific instances or examples in which HPD exercised actual control over the details of RS & A's work. Evidence that HPD ensured that an independent contractor properly performed its work does not make RS & A an employee. *See Limestone*, 71 S.W.3d at 312 (when relationship is that of employer-employee, rather than independent contractor, "employer controls not merely the end sought to be accomplished, but also the means and details of its accomplishment."). At most, this summary-judgment evidence indicates that HPD had control over the end results of RS & A's consulting work and that RS & A had a contractual duty to HPD. This is insufficient to raise a fact issue regarding whether HPD had the level of control over the details of the daily operation of RS & A necessary to make RS & A an employee. *See id.* (concluding driver was independent contractor even though limestone distributor dictated end result of where to pick up and drop off loads because driver "had broad discretion in how to do everything else"); *Olivares*, 401 S.W.3d at 372 (holding evidence that governmental unit retained final approval over decisions and actions on construction of highway established only control over end results of contractor's work but not control over details of work); *EPGT Tex. Pipeline, L.P. v. Harris Cnty. Flood Control Dist.*, 176 S.W.3d

330, 337 (Tex. App.—Houston [1st Dist.] 2004, pet. dism'd) (concluding that evidence "indicate[d] control over the general requirements of the projects, and [their] proper completion, but [did] not show control over the details of [subcontractor's] work with regard to [its] employees use of motor-driven vehicles," which was necessary to determine whether party was employee or independent contractor).

Balancing the five *Bishop* factors and the relevant summary-judgment evidence, we conclude that RS & A was an independent contractor and therefore not a "public employee" under the Whistleblower Act. *See Ranjel*, 407 S.W.3d at 891–92 (appellant failed to raise fact issue regarding third party operator's employee status where evidence did "nothing more than establish that Houston controlled the end result of [operator's] contractual duty to operate and maintain the [automated people-mover] system" at Houston-owned airport); *EPGT Tex. Pipeline*, 176 S.W.3d at 336–38 (undisputed summary-judgment evidence showed construction company hired by governmental entity was independent contractor where company furnished its own equipment and supplies, was paid by job, and decided means and methods used for job, and "no one from Harris County told [construction company's employees] how to do it.").

Having concluded that RS & A was an independent contractor, we hold that Smith did not report an alleged violation of law *by the employing governmental*

*entity or a public employee.  See* TEX. GOV'T CODE ANN. § 554.002(a) (requiring that a public employee report alleged violation of law "by the employing governmental entity or another public employee"); *Steward*, 139 S.W.3d at 358 (concluding plaintiff did not state whistleblower claim because reported violation was by private organization).  Because the record thus conclusively negates subject-matter jurisdiction, we must dismiss Smith's suit.[4]  *See Black*, 392 S.W.3d at 96 (appellate court should dismiss case if pleadings and record conclusively negate jurisdiction); *Coll. of the Mainland v. Glover*, 436 S.W.3d 384, 394–395 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) (reversing and rendering judgment dismissing plaintiff's suit because record conclusively negated jurisdictional fact in appeal from denial of plea to jurisdiction in gender discrimination case).

---

[4]     We decline to address the City's remaining issues regarding the other elements of a whistleblower claim as their resolution would not result in greater relief to the City.  *See* TEX. R. APP. P. 47.1 (court of appeals need only address issues raised and necessary to disposition of appeal); *State v. Ninety Thousand Two Hundred Thirty–Five Dollars and No Cents in U.S. Currency ($90,235)*, 390 S.W.3d 289, 294 (Tex. 2013) (same).

## Conclusion

We vacate the trial court's order denying the City's motion for summary judgment and dismiss the case.


Rebeca Huddle
Justice

Panel consists of Justices Keyes, Huddle, and Lloyd.