**Affirm and Opinion Filed December 11, 2023**



In The
### Court of Appeals
### Fifth District of Texas at Dallas

_____

**No. 05-22-01139-CV**

_____

**ALANI CONSULTING, INC. AND B12 CONSULTING, LLC, Appellants**
**V.**
**UST GLOBAL INC. AND ALAN GOERNER, Appellees**

**On Appeal from the 14th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-22-01748**

## MEMORANDUM OPINION

Before Justices Carlyle, Goldstein, and Kennedy
Opinion by Justice Goldstein

Alani Consulting, Inc., and B12 Consulting, LLC, appeal the trial court's order granting the special appearance of UST Global, Inc., and Alan Goerner. In three issues, Alani and B12 assert the trial court's order granting UST's special appearance should be reversed because the trial court's implied findings wrongly found that 1) UST does not fall within the reach of Texas' long-arm statute; 2) Goerner was not an employee of UST; and 3) it does not have specific jurisdiction over UST. We affirm the trial court's judgment.

# FACTUAL BACKGROUND

Alani is a Dallas-based IT consulting company with nationwide and European clients, utilizing its proprietary assessment model to tailor "IT solutions to maximize agility and implement comprehensive digital transformations for its clients." B12 is an IT staffing company whose sole member is a citizen and resident of the state of Texas.

Goerner, a Dallas County resident, was Alani's chief strategist, who received confidential information under his employment confidentiality agreement (ECA) and later served as a business consultant. During Goerner's tenure as chief strategist, Alani was focused on expanding existing client relationships with Telefónica and BBVA and developing business with Orange. Due to alleged performance issues, Goerner was removed as chief strategist and, upon his termination, negotiated a consulting role with Alani's corporate parent. Goerner also negotiated, but never finalized, a license agreement and executed a Mutual Non-Disclosure Agreement with B12. During the negotiation period, UST was actively soliciting Goerner for employment and Goerner is alleged to have shared Alani's confidential information in violation of his ECA and NDA. UST hired Goerner to serve as the global head of UST's agility practice.

UST is a Delaware corporation with its principal place of business in California and a registered agent in Dallas, Texas. UST, like Alani, provides IT solutions, including agile consulting services, to its clients. The original petition

avers the trial court has jurisdiction over UST based upon actions undertaken by Goerner while acting as an agent of UST under the direction and control of UST. Specifically, the original petition alleges that Goerner, once installed at UST, "at UST's direction and while acting under UST's control, continued to access and download Confidential Information and trade secrets from the Alani Dropbox account in violation of the ECA and NDA." Further, Alani averred that "Goerner was accessing Alani's Confidential Information and trade secrets in order to solicit Alani's clients on behalf of his new employer, UST." As a result of these efforts, Alani alleges it lost corporate opportunities with current clients UPS, BBVA, and Telefónica and prospective business relationships with Orange and Macquarie.

In February 2022, Alani and B12 filed their original petition seeking damages and injunctive relief against UST and Goerner and alleging claims based on violation of the Texas Uniform Trade Secrets Act (TUTSA); Goerner's breach of contract under the ECA and NDA and breach of fiduciary duty; UST's tortious interference with the B12 NDA and conversion and misappropriation; and conspiracy. The petition asserted the trial court had "jurisdiction over this matter because the transactions that give rise to Alani's claims occurred in whole or in part in Texas, because Goerner is a Texas citizen and resident, because he undertook the acts complained of in Texas while acting as an agent of UST under the direction and control of UST, and the amount in controversy exceeds the minimum jurisdictional limit of the Court."

**UST'S SPECIAL APPEARANCE**

After jurisdictional discovery, UST filed its verified second amended special appearance seeking to dismiss the three claims[1] asserted against it because (1) Alani and B12 failed to meet their initial burden of pleading sufficient allegations to demonstrate that UST committed any act in Texas; (2) UST did not have sufficient minimum contacts in Texas to support the Court's exercise of personal jurisdiction over it; and/or (3) UST negated Alani and B12's allegations of its jurisdictional contacts with Texas. Because UST had insufficient contacts with Texas that were connected to the operative facts of the litigation, UST argued, there was no basis to exercise specific personal jurisdiction over it.[2]

As to B12, UST argued B12 did not allege that any operative facts attributable to UST occurred in Texas. Specifically, UST asserted that B12 only made one claim against UST: tortious interference with a non-disclosure agreement between Goerner and B12, and B12 made only the conclusory allegations that UST willfully and intentionally interfered with the non-disclosure agreement between Goerner and B12. UST argued B12 made "no specific allegations relating to this claim at all, much less any jurisdictional allegations arising in Texas," and there was no

---

[1] B12 asserts tortious interference with the NDA with Goerner. Alani's two claims are violations of TUTSA and conspiracy.

[2] General personal jurisdiction was not alleged; therefore, our statement of the facts and analysis are limited to specific personal jurisdiction.

allegation anywhere in the petition of what this alleged interference was, let alone that the alleged interference occurred in Texas. In addition, UST claimed that B12 could not prove tortious interference because UST negated that it had any knowledge of the non-disclosure agreement between Goerner and B12 and therefore could not have induced a breach of the non-disclosure agreement, an essential element of B12's claim.

As to Alani, UST first asserted Alani failed to establish an agency relationship between UST and Goerner, an independent contractor, and the "supposed forum contacts" of an independent contractor are not attributable to the principal. Second, UST argued it did not direct Goerner to commit any of the alleged misconduct attributed to Goerner in Alani's petition. Third, even if Goerner's alleged acts could be imputed to UST, UST argued that Alani failed to allege that the specific actions relevant to its claims against UST occurred in Texas. Specifically, UST asserted that the "bare assertion that Goerner is a resident of Texas does not show that the alleged actions, which are the operative facts underlying Alani's claims against UST . . . occurred in Texas." Regarding Alani's conspiracy claim, UST cited *National Industrial Sand Association v. Gibson*, 897 S.W.2d 769, 773 (Tex. 1995), for the proposition that, even if UST had alleged jurisdictional facts in connection with its conspiracy claim, specific personal jurisdiction may not be asserted over UST based solely upon an alleged conspiracy.

In support of its arguments, UST cited the attached affidavit of Niranjan Ramsunder, UST's chief technology officer. Ramsunder stated that Goerner became an independent contractor for UST on November 26, 2018, through an independent contractor agreement Ramsunder negotiated between UST and Bluegreen Evolution, Goerner's company. According to the affidavit, until B12'a allegations in this case, Ramsunder was unaware of a non-disclosure agreement between Goerner and B12, and UST was not provided with a copy. Between November 26, 2018, and December 14, 2020, Goerner reported directly to Ramsunder, and Ramsunder was solely responsible for directing the ends sought to be accomplished through Goerner's work for UST. However, Ramsunder did not control the means and details of how Goerner accomplished his work on behalf of UST.

Ramsunder's affidavit stated that UST has no consulting clients located in Texas. Regarding the clients Alani's petition identified as solicited by Goerner, the affidavit stated that BBVA, Telefonica, Orange, and Macquarie had never been UST clients. Moreover, BBVA, Telefonica, and Orange are located in Spain, and Macquarie is located in Australia. UPS is not located in Texas, and UST has done no consulting proposals and has performed no consulting services for UPS. Ramsunder's affidavit concluded that, since the time Goerner joined UST in November 2018, he was not involved in soliciting or performing consulting services for BBVA, Telefonica, Macquarie, or Orange.

Ramsunder referred to an independent contractor agreement, attached as Exhibit 1 to the affidavit, between Goerner and UST. The independent contractor agreement instructed Goerner to comply with his legal obligations to Alani and did not authorize or direct Goerner to access or use any of Alani's alleged confidential information or trade secrets. Under the heading "DESCRIPTION OF SERVICES," the agreement stated that the services Goerner provided excluded "any services similar to those which [Goerner] provided to Alani Consulting, Inc. specifically regarding any existing or prospective business relationships with its customers in Spain and Australia." The agreement provided that Goerner would not solicit customers for one year and would "specifically not work with" Telefonica, BBVA, Orange, or Macquarie "in any Geography." Under the heading "INDEPENDENT CONTRACTOR STATUS," the agreement provided that "Independent Contractor [Goerner] is an independent contractor and shall not be deemed to be employed by UST Global nor any UST Global Client."

The special appearance also contained Goerner's affidavit in which he stated he stopped working for Alani in August 2018 and signed a mutual non-disclosure agreement with B12 in September 2018. After he signed the non-disclosure agreement, Goerner "did not receive or develop any new confidential, proprietary, or trade secret B12 (or Alani) information that would have been subject to" the non-disclosure agreement. Goerner became an independent contractor for UST on November 26, 2018, through an agreement between UST and Bluegreen Evolution

LLC, Goerner's company. Goerner did not recall mentioning or providing a copy of the non-disclosure agreement to anyone at UST prior to or after joining UST. Goerner directly reported to Niranjan Ram[3] from November 26, 2018, until December 14, 2020, when Goerner semi-retired. During that time, "no one at UST . . . [was] directing [Goerner's] work." While Ram "was responsible for directing the ends sought to be accomplished through [Goerner's] work for UST," Ram "did not control the means and details of how [Goerner] accomplished [his] work for UST." In particular, Goerner stated that no one at UST authorized or directed him to access a DropBox subfolder on his personal account, and he did not use "any of the information identified in [Alani's] First Amended Petition in connection with any services [he] performed for UST."

Alani filed a response to the special appearance in which it alleged Goerner, employed by UST as a "Managing Director," misappropriated Alani's confidential business information and used that information to solicit Alani's existing and prospective clients on behalf of UST "by accessing an Alani Dropbox account from his home office computer in Texas." The response alleged the Dropbox account contained "trade secret files" that Goerner accessed and shared to Alani employees. Because UST was "responsible for the acts of its Managing Director that occurred in Texas," Alani alleged UST had sufficient contacts with Texas to support the

---

[3] While Goerner's affidavit refers to "Niranjan Ram" as the person to whom Goerner directly reported, when read in the context of Niranjan Ramsunder's affidavit, it is clear that "Niranjan Ram" is a shortened version of "Niranjan Ramsunder" and refers to the same person.

exercise of personal jurisdiction. The response conceded that Goerner's agreement with UST defined Goerner as a "Contractor" but alleged that this designation appeared to be "solely for tax and benefits purposes," and the agreement was silent as to whether UST had the right to control the means and details of Goerner's work.

At a hearing on UST's special appearance in September 2022, counsel for UST summarized the claims against UST as a "single claim for tortious interference with a [n]ondisclosure [a]greement" asserted by B12 and a "claim under TUTSA for trade secret theft" asserted by Alani. Counsel asserted the Ramsunder affidavit negated that UST had knowledge of the nondisclosure agreement between Goerner and B12 or knowledge of the B12 clients identified in the nondisclosure agreement. Further, counsel argued these statements were not controverted.

The trial court asked for a response to this argument, and Alani's counsel stated that the independent contractor agreement between UST and Goerner that was attached to UST's special appearance "specifically identifies the clients that claims are being brought for UST's improper solicitation of." Counsel argued that the agreement's identification of specific clients was "some indication in and of itself that UST had enough knowledge of those clients to enter into an agreement to prohibit Goerner's involvement in their solicitation" and that otherwise "there would be no reason for UST to enter into a non-compete that specifically identified the specific clients that B12 claims were improperly solicited." Counsel argued that "to suggest we [UST] had no knowledge that there was any NDA between B12 and

–9–

Goerner yet had enough knowledge to enter into its own agreement to prohibit solicitation that would violate it, to me strains credulity and is an indication that UST, in fact, was aware of Mr. Goerner's NDA."

UST's counsel responded that there was no evidence that the companies identified in the independent contractor agreement were actually B12 clients, and that neither the companies nor B12 were mentioned in the affidavit of Shouvik Bhattacharyya, a representative of Alani and B12 who personally hired Goerner to serve as Alani's chief strategist. Ramsunder's affidavit established that UST "did not know that any of these clients may or may not be B12 clients until the lawsuit was filed." Counsel cited Goerner's deposition testimony in which Goerner testified those clients were listed in the independent contractor agreement because he "provided those names as the names of the companies that he believed would be encompassed within the Alani non-compete." Further, counsel represented that "Goerner actually testified to in his deposition was that he did not recall whether or not he discussed the Nondisclosure Agreement that he had with B12 with UST," contending UST negated jurisdiction on the basis of lack of knowledge of the NDA.

As to Alani, UST's counsel stated Alani's claim was that UST is responsible for Goerner's acts in Texas, and the "primary question" was whether Goerner's alleged acts could be imputed to UST. Counsel asserted that the burden of proof of agency was on Alani.

In response to questioning from the trial judge, Alani's counsel agreed that it was Alani's position that, "because [Goerner was] the managing director, that makes him ipso facto the agent." Also in response to questioning, UST's counsel stated UST's position that being a managing director did not make Goerner an agent, and there had to be "actual proof of the right to direct the means and details of the process." Counsel argued that UST "negated the right to dictate the means and details of the work in two different affidavits that were not controverted."

The trial judge asked what evidence showed proof of control. Alani's counsel responded that the non-competition/non-solicitation agreement between UST and Goerner "identified Goerner as an employee of UST, and the fact that Goerner was "an employee of an employer" was "some evidence of an employer's ability to control the employee. In response, UST's counsel stated the agreement did not "establish direction or control or the right to dictate the means and details of the work." On September 26, 2022, the trial court signed an order granting UST's second amended special appearance. This appeal followed.

## DISCUSSION

Alani and B12 challenge the trial court's implied findings that UST does not fall within the reach of Texas' long-arm statute, that Goerner was not an employee of UST, and that the trial court therefore lacked specific jurisdiction over UST. Because of the interrelated nature of these issues, we address them together. We reiterate that Alani asserted the trial court had jurisdiction over all of Alani's claims

because Goerner was acting as an agent of UST and was under the direction and control of UST when Goerner undertook the acts giving rise to Alani's claims.

Whether a trial court has personal jurisdiction over a nonresident defendant is a question of law that appellate courts review de novo. *See Steward Health Care Sys. LLC v. Saidara*, 633 S.W.3d 120, 125 (Tex. App.—Dallas 2021, no pet.) (en banc) (citing *Old Republic Nat'l Title Ins. Co. v. Bell*, 549 S.W.3d 550, 558 (Tex. 2018)). When a trial court does not issue findings of fact and conclusions of law with its special appearance ruling, all facts necessary to support the judgment and supported by the evidence are implied. *Id.* When the appellate record includes the reporter's and clerk's records, these implied findings are not conclusive and may be challenged for legal and factual sufficiency in the appropriate appellate court. *Id.* at 125–26. (citing *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002)). When the relevant facts in a case are undisputed, an appellate court need not consider any implied findings of fact and considers only the legal question of whether the undisputed facts establish Texas jurisdiction. *Saidara,* 633 S.W.3d at 126 (citing *Old Republic*, 549 S.W.3d at 558).

Courts have recognized two types of personal jurisdiction: "general" jurisdiction and "specific" jurisdiction. *See Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 582 U.S. 255, 262 (2017). As general personal jurisdiction is not alleged, we focus on specific jurisdiction.

Specific jurisdiction exists when (1) the defendant has "made minimum contacts with Texas by purposefully availing itself of the privilege of conducting activities [in the state]," and (2) the defendant's potential liability arose from or is related to those contacts. *In re Christianson Air Conditioning & Plumbing, LLC*, 639 S.W.3d 671, 679 (Tex. 2022) (orig. proceeding) (quoting *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 576 (Tex. 2007)). To show purposeful availment, a plaintiff must prove that a nonresident defendant seeks a benefit, advantage, or profit from the forum market. *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 785 (Tex. 2005)). Only the defendant's contacts are relevant, not the unilateral activity of another party or third person. *See id.* And those contacts "must be purposeful rather than random, fortuitous, or attenuated." *Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 414 S.W.3d 142, 151 (Tex. 2013) (quoting *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 338–39 (Tex. 2009)).

The plaintiff bears the initial burden of pleading sufficient allegations to bring a nonresident defendant within the provisions of the Texas long-arm statute. *Saidara*, 633 S.W.3d at 126 (citing *Old Republic*, 549 S.W.3d at 559; *Moncrief Oil*, 414 S.W.3d at 149). In order to meet its burden, a plaintiff must show the act on which jurisdiction is predicated, not a prima facie demonstration of the existence of a cause of action. *Bruno's Inc. v. Arty Imports, Inc.*, 119 S.W.3d 893, 896–97 (Tex. App.—Dallas 2003, no pet.); *Clark v. Noyes*, 871 S.W.2d 508, 511 (Tex. App.—

Dallas 1994, no pet.)). This minimal pleading requirement is satisfied by an allegation that the nonresident defendant is doing business in Texas or committed tortious acts in Texas. *See id.* (citing *Alencar v. Shaw*, 323 S.W.3d 548, 553 (Tex. App.—Dallas 2010, no pet.)). If the plaintiff does not meet this burden, the defendant need only prove that it does not reside in Texas to negate jurisdiction. *See Siskind v. Villa Found. for Educ., Inc.*, 642 S.W.2d 434, 438 (Tex. 1982); *Jani-King Franchising, Inc. v. Falco Franchising, S.A.*, No. 05-15-00335-CV, 2016 WL 2609314, at *4, (Tex. App.—Dallas May 5, 2016, no pet.) (mem. op.)).

### B12's claim of tortious interference with nondisclosure agreement

To establish a claim for tortious interference with a contract, a plaintiff must establish: (1) the existence of a valid contract subject to interference; (2) that the defendant willfully and intentionally interfered with the contract; (3) that the interference proximately caused the plaintiff's injury; and (4) that the plaintiff incurred actual damage or loss. *Cmty. Health Sys. Prof'l Services Corp. v. Hansen*, 525 S.W.3d 671, 689 (Tex. 2017); *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 207 (Tex. 2002). Interference with a contract is tortious only if it is intentional. *Sw. Bell Tel. Co. v. John Carlo Tex., Inc.*, 843 S.W.2d 470, 472 (Tex. 1992). Intentional interference does not require intent to injure, only that "the actor desires to cause the consequences of his act, or that he believes that the consequences are substantially certain to result from it." *Id.* (citation omitted). There must be direct evidence of a willful act of interference. *Browning–Ferris, Inc. v. Reyna*, 865 S.W.2d 925, 927

(Tex. 1993). The interfering party must know of the existence of a contract between the plaintiff and a third party or have knowledge of facts that would lead a reasonable person to conclude that a contract existed. *Exxon v. Allsup*, 808 S.W.2d 648, 656 (Tex. App.—Corpus Christi 1991, writ denied).

While the agreement between B12 and Goerner contained a nondisclosure agreement, there is no evidence that UST committed a willful and intentional act of interference with it. *See Reyna*, 865 S.W.2d at 927; *Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572, 588 (Tex. 2017); *Vertex Servs., LLC v. Oceanwide Houston, Inc.*, 583 S.W.3d 841, 854 (Tex. App.—Houston [1st Dist.] 2019, no pet.). Indeed, B12 has not offered any evidence to show that UST knew that the B12 nondisclosure was in effect at the time it was alleged to have interfered with it. *See Mark III Sys., Inc. v. Sysco Corp.*, No. 01-05-00488-CV, 2007 WL 529960, at *5 (Tex. App.—Houston [1st Dist.] Feb. 22, 2007, no pet.) (mem. op.) ("To be subject to liability [for tortious interference with contract], an actor must have knowledge of the contract or relation with which he is interfering and of the fact that he is interfering with the performance of that contract."). In the absence of evidence to establish B12's tortious interference claim, there was no basis to exercise jurisdiction over UST with respect to B12's claim. *See In re Christianson Air Conditioning & Plumbing, LLC*, 639 S.W.3d at 679.

***Alani's claims premised on Goerner's status as an agent of UST***

Contacts of an agent may be sufficient to confer jurisdiction upon the principal. *Olympia Cap. Assocs., L.P. v. Jackson*, 247 S.W.3d 399, 412 (Tex. App.—Dallas 2008, no pet.). An agent is one who consents to the control of another to conduct business or manage some affair for the other, who is the principal. *Id.* at 413. We do not presume an agency relationship exists, and the burden of proof is on the party asserting the existence of the relationship. *Id.* An essential element of the principal-agent relationship is the alleged principal's right to control the actions of the alleged agent. *Id.* This right includes not only the right to assign tasks, but also the right to dictate the means and details of the process by which an agent will accomplish the task. *Id.* In contrast, when one has the right to control the end sought to be accomplished, but not the means and details of how it should be accomplished, the person employed acts as an independent contractor and not as an agent. *Id.* An agent's contacts with the forum are attributable to the principal, but the contacts of an independent contractor are not. *Id.*

Texas courts generally consider five factors when analyzing whether an employer has a right to control a person's work: (1) the independent nature of the worker's business; (2) the worker's obligation to furnish the necessary tools, supplies, and materials to perform the job; (3) the worker's right to control the progress of the work except about final results; (4) the time for which the worker is employed; and (5) the method of payment, whether the worker is paid by unit of

time or by the job. *Mid-Continent Cas. Co. v. Andregg Contracting, Inc.*, 391 S.W.3d 573, 576 (Tex. App—Dallas 2012, pet. denied).

Here, UST hired Goerner and his company under an independent contractor agreement that did not provide UST with any ability to control the manner and means by which Goerner did his work. The independent contractor agreement provided Goerner was responsible for his personnel, including payment of applicable taxes and employment benefits. Goerner maintained his business and performed his work separately from UST, and no one at UST directed Goerner's work. While Ramsunder was responsible for directing the ends sought to be accomplished through Goerner's work, Ramsunder did not control the means and details of how Goerner accomplished his work for UST. The independent contractor agreement provided for a term of employment from November 26, 2018, until August 30, 2019, unless explicitly extended by an addendum to the agreement. The agreement provided that Goerner would be paid each month as "an independent contractor and shall not be deemed to be employed by UST or any UST Client." UST expressly did not provide "insurance coverage of any kind for Independent Contractor" and did not "withhold any amount from payment for Independent Contractor that would normally be withheld from an employee's pay," including social security or federal, state, or city/local taxes. Based on this record, we conclude UST lacked the right to control Goerner's work, and Goerner therefore retained his status as an independent contractor. *See id.* Because Goerner was an independent contractor, his contacts

–17–

with Texas were not attributable to UST. *See Jackson*, 247 S.W.3d at 412. Based on the undisputed facts of this case, UST itself had no contacts with Texas. *See Saidara*, 633 S.W.3d 126. Thus, in the absence of contacts with Texas either directly by UST or attributable to UST, there was no basis to exercise jurisdiction over UST with respect to Alani's claims of trade secret theft, breach of contract, breach of fiduciary duty, tortious interference with contract, and conversion and misappropriation. *See In re Christianson Air Conditioning & Plumbing, LLC*, 639 S.W.3d at 679.

### *Alani's conspiracy claim*

A conspiracy claim alone is not enough to establish personal jurisdiction. *MasterGuard L.P. v. Eco Techs. Int'l LLC*, 441 S.W.3d 367, 376 (Tex. App.—Dallas 2013, no pet.) (citing *Nat'l Indus. Sand Ass'n v. Gibson*, 897 S.W.2d 769, 773 (Tex. 1995) ("Thus, we decline to recognize the assertion of personal jurisdiction over a nonresident defendant based solely upon the effects or consequences of an alleged conspiracy with a resident of the forum state.")). Thus, we need not further address the trial court's jurisdiction over Alani's conspiracy claim. We overrule Alani and B12's issues.

We affirm the trial court's judgment.

221139f.p05

/Bonnie Lee Goldstein/.
_____
BONNIE LEE GOLDSTEIN
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ALANI CONSULTING, INC. AND
B12 CONSULTING, LLC,
Appellants

No. 05-22-01139-CV      V.

UST GLOBAL INC. AND ALAN
GOERNER, Appellees

On Appeal from the 14th Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-22-01748.
Opinion delivered by Justice
Goldstein. Justices Carlyle and
Kennedy participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellees UST GLOBAL INC. AND ALAN GOERNER recover their costs of this appeal from appellants ALANI CONSULTING, INC. AND B12 CONSULTING, LLC.

Judgment entered this 11th day of December, 2023.